NORTHCUTT, Judge,
Concurring.
I wholly agree with the majority opinion, but I write' separately for two reasons. The first is to clarify the precise way in which the State’s evidence was insufficient to present the question of Rocker’s guilt or innocence to the jury. The majority and the dissent quite properly focus on whether the evidence was sufficient to prove that Rocker intended the robbery of Day and that he assisted that endeavor. These were the elements necessary to establish Rocker’s guilt as a principal to the robbery attempt. As the dissent points out, the question of intent — that is, what did the defendant intend — is usually for the jury. But the State’s case failed at a more basic level: nothing in the evidence showed that Rocker was even aware that Banks intended to rob Day.
The question of knowledge is not the same as that of intent. As both of my colleagues recognize, a defendant’s mere knowledge that another plans to commit a crime is insufficient to prove that the defendant was a principal to that crime, i.e., that he intended for the crime to be carried out. But it is certainly also true that the defendant could not be a principal to the crime without prior knowledge of it. In other words, knowledge coupled with other circumstances may or may not be sufficient to show intent, but intent cannot be circumstantially proved unless one or more of the circumstances demonstrate knowledge.
Thus, before the jury could be called upon to decide whether Rocker intended for Day to be robbed, the State was obliged to demonstrate that Rocker knew of Banks’ intention to do so. It failed in that proof because none of the State’s circumstantial evidence, whether examined singly or collectively among the “surrounding circumstances”, demonstrated Rocker’s knowledge of Banks’ plan. None of the circumstances even preponderated over the reasonable theory that Rocker was unaware of Banks’ intention, let alone refuted it. As such, the evidence could not, as a matter of law, support a jury’s determination that Rocker knew of the planned robbery attempt beyond a reasonable doubt.
With that said, my second purpose is to address the dissent’s mistaken interpretation of the special standard of review applicable to circumstantial evidence cases. The basis of that misunderstanding can be seen in the dissent’s quotation from a two-sentence passage in State v. Law, 559 So.2d 187, 188 (Fla.1989). The dissent writes:
“Where the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence.” State v. Law, 559 So.2d 187, 188 (Fla.1989). However, “[t]he question of whether the evidence fails to exclude all reasonable hypotheses of innocence is for the jury to determine,” and the jury’s decision will not be reversed where there is substantial, competent evidence supporting it. Id. (emphasis added)
The dissent seizes on the second sentence as justification for treating the circumstantial evidence rule as purely a jury matter. It carries this premise forward to embrace a highly deferential standard of review in circumstantial evidence cases.
In so doing, it has overlooked that Law was written for the very purpose of reconciling the roles of the judge and jury in a circumstantial criminal case — and it rejected the view advanced by the dissent.
The Law court described the issue before it as “whether a trial judge may send a criminal case to the jury if all of the *907 state’s evidence is circumstantial in nature and the state has failed to present competent evidence sufficient to enable the jury to exclude every reasonable hypothesis of innocence.” 559 So.2d at 188. Put another way, the court wrote, “does the common law circumstantial evidence rule apply when a trial judge rules on a motion for judgment of acquittal?” Id.
In Law, the state contended that the rule did not apply to a motion for judgment of acquittal. It argued that because a defendant moving for judgment of acquittal admits all reasonable inferences from the evidence in favor of the state, the case should go to the jury regardless of whether the state’s evidence is inconsistent with the defendant’s reasonable hypothesis of innocence. Id. at 188. At bottom, this is the same reasoning by which the dissent concludes that in this case the State met its burden of introducing evidence that is inconsistent with Rocker’s theory of innocence simply by tendering evidence from which the jury could infer his guilt.
But, of course, the fact that a circumstance might support an inference of guilt does not mean that it does not also support an inference of innocence. If the circumstantial evidence rule only required the state to submit evidence from which the jury could infer guilt, the standard of review could hardly be considered “special”, because circumstantial cases would be like any other. Rather, to satisfy the circumstantial evidence rule, the state’s evidence must be truly inconsistent with the defendant’s theory of innocence; it must contradict it or exclude it as a reasonable possibility.
As we know, the Law court rejected the state’s argument. It held that the state’s burden is “to introduce competent evidence which is inconsistent with the defendant’s theory of events.” Id. at 189. Only after that burden is met does it fall to the jury to determine whether the evidence is sufficient to “exclude every reasonable hypothesis of innocence beyond a reasonable doubt.” Id. Indeed, the court wrote that if the state does not offer evidence that is inconsistent with the defendant’s hypothesis of innocence, “ ‘the evidence [would be] such that no view which the jury may lawfully take of it favorable to the [state] can be sustained under the law.’ ” Id. at 189 (quoting Lynch v. State, 293 So.2d 44, 45 (Fla.1974) (alteration in original)).
Thus, the Law court expressly agreed with the following statements in Fowler v. State, 492 So.2d 1344, 1347 (Fla. 1st DCA 1986):
[I]t is for the court to determine, as a threshold matter, whether the state has been able to produce competent, substantial evidence to contradict the defendant’s story. If the state fails in this initial burden, then it is the court’s duty to grant a judgment of acquittal to the defendant as to the charged offense, as well as any lesser-included offenses not supported by the evidence.
559 So.2d at 189 (emphasis supplied) (quoting Fowler, 492 So.2d at 1347).
The upshot is that it is a judicial function to determine in the first instance whether the circumstances shown by the state’s evidence contradict the defendant’s reasonable hypothesis of innocence. If it does not, as a matter of law the jury cannot infer the defendant’s guilt. To be sure, when making that assessment the court must give the state the benefit of any conflicts in the evidence. But it is not, as the dissent maintains, a question of whether the jury might reasonably infer in favor of the state over the defense. The circumstances either contradict the defense theory' or they do not. If the latter, it is the trial court’s duty to grant a judgment of acquittal. Failing that, it is the appellate court’s duty to reverse.
*908 In the ease before it, the Law court examined the record and identified specific aspects of the state’s evidence that contradicted the defendant’s theories of innocence. For example, the defendant’s theory that the fatal blow was delivered by the young victim’s mother, who was the last one to check on him the night he died, “was refuted by evidence that the fatal blow likely had been delivered well before [the mother] entered the room to check on the child’s breathing.” Id. at 190 (emphasis supplied). Also, the court noted that an expert pathologist gave testimony “refuting” Law’s theory that the victim’s fatal subdural hematoma could have been caused during roughhousing with the victim’s older brother. Id. The pathologist’s testimony was also “sufficiently at odds” with Law’s theory that the fatal injury and others present on the child’s body could have been caused by a series of accidental falls. Id. at 190-91. The defense theory that Law may have accidentally caused the boy’s head injury while the two were playing on the night of his death was contradicted by the defendant’s own testimony as well as that of the pathologist. Id. at 191. The Law court concluded that, because the state presented evidence that contradicted the defendant’s theories of innocence, the case was properly submitted to the jury.
As did the supreme court in Law, in this case the majority has painstakingly examined the State’s circumstantial evidence. It has accurately concluded that none of that evidence contradicted the theory that Rocker’s involvement in the fatal incident was as the organizer of an intended drug transaction, not as a principal to an attempted robbery. As such, the evidence was legally insufficient to support Rocker’s conviction no matter how strongly it might have suggested his guilt.
In contrast, for the most part the dissent recites circumstances that merely supported an inference of Rocker’s guilt without regard to whether that evidence contradicted his theory of innocence. This is consistent with the dissent’s assertion that when assessing the legal sufficiency of the evidence we must defer to the jury’s ability to draw inferences, but it contravenes the circumstantial evidence rule as prescribed by the supreme court.
To be fair, I note that in its recitation of circumstances the dissent mentions three that it suggests were at odds with Rocker’s theory of events. First, it posits that “if Rocker and Banks had simply wanted to purchase drugs that night, they could have purchased them from Butler, who testified that he left his house to sell cocaine.” But this is an inference improperly stacked atop two others, i.e., that Rocker and Banks knew that Butler had cocaine to sell, and that Butler would have sold it to them. No evidence supported this. To the contrary, the evidence suggested good reasons why Butler would have kept to himself his own intention to engage in a drug deal. For one thing, in his testimony Butler noted that Rocker was not a close friend and that Banks was merely an acquaintance who arrived with Rocker unexpectedly. Butler also testified that he did not want to get involved with whatever Rocker and Banks were about that evening because he was “straight”; he was on probation and did not want to have it violated. And, as we know, Butler had his own business to transact. Having arranged to sell cocaine to a buyer — Butler testified that he was going to meet a regular customer — it likely was not in his best interest to instead offer the drugs to Rocker and Banks. In short, the fact that Butler intended to sell cocaine that night in no way contradicted the theory that Rocker was planning a cocaine buy from Brennon Days.
*909 Next, the dissent points out that “although Rocker was the person who had purchased cocaine from the victim in the past, when the victim drove to the neighborhood, Rocker apparently hid.” It is worth noting that the testimony did not establish that Rocker was the person who had purchased cocaine from Days in the past. Days was Rocker’s drug dealer, but no one testified that Rocker was his only customer or that he had never sold to Banks. Indeed, although Rocker apparently made calls to arrange a cocaine buy from Days that night, no evidence suggested that Days was expecting to meet only Rocker — or, for that matter, that Rocker was the prospective buyer. All told, there was nothing to suggest that Banks was not an intended participant in the transaction from the start. Finally on this point, Butler did not testify that Rocker hid; rather, he lost sight of Rocker in the dark and did not know his whereabouts when the shooting occurred. But even if Rocker could be said to have hid, this does not mean that he was hiding from Days. It would have been perfectly reasonable for him to stand back in the shadows to avoid being observed while the younger Banks made an illegal drug purchase in a public place. Again, these circumstances were fully consistent with Rocker’s theory of innocence; they did not undermine it in any way.
Finally, the dissent observes: “As the trial court noted, ‘you don’t go up to somebody that you’re going to do a dope deal with and say where’s the money at.’ ” The fallacy in this argument is plain to see: Rocker was not the one who said it. There was no evidence to show that he heard it said, and there was no evidence suggesting that he knew it would be said. That Banks demanded money from Days and then shot him simply did not refute the defense theory that Rocker’s involvement was purely as the organizer of a drug transaction.
In sum, the three members of this panel have separately and meticulously combed through the record, and none of us has identified any evidence that contradicted Rocker’s theory of innocence. To the contrary, all of the circumstantial evidence— every last bit of it — was fully consistent with Rocker’s innocence. Accordingly, we are duty bound to reverse his conviction.